Good morning, Your Honor. Daniel Bustle for Marlene Penrod. And may it please the Court, I would like to reserve three minutes for rebuttal. This case is, I'm sure you hear this a lot, but this case is really a very simple case. California has an emphatic public policy of reciprocity. If a lender has the right, in the course of enforcing its debt and collecting it from its borrower to assess attorney's fees, then as a matter of California law, the borrower has a reciprocal right to its attorney's fees in the event that it successfully defends that action. And that right doesn't depend on the contract. It depends on California State law, Section 1717. But for that law to come into effect, there has to be a contract claim. Well, there has to be an action on a contract with the meaning of Section 1717. That's not the case. Right, right. If you have a tort claim, it just doesn't come into play. That's correct, Your Honor. There has to be some underlying contract claim. And I guess the issue that I have trouble sorting out is whether a proof of claim filed in a bankruptcy proceeding counts as a claim under the contract. There's no question but that it does, Your Honor. Really, there's two elements to the analysis. First, as a matter of contract, the question that AmeriCredit raises, this is not the theory of the bankruptcy court or the district court below, which simply categorically excluded the collection of bankruptcy-related fees on the basis of essentially recasting the Fobian rule as a rule of State law. But AmeriCredit says, no, there's an additional layer of analysis. Look at the contract. The contract says Ms. Penrod is obligated to pay the principal interest at 20 percent and also cost of collection, including reasonable attorney's fees. So to summarize what I understand your argument to be, it is that in the context of a bankruptcy proceeding, if a creditor files a proof of claim that arises out of a contract, then that counts as an action under the contract. And that's the mechanism of the contract for purposes of 1717. There's no other explanation for filing a proof of claim other than you want to collect the debt that's owed you. That's the mechanism. When you talk about cost of collection, the contract in this case doesn't make any distinction about venue. So it's true there was no collection suit in California State court. There couldn't have been a collection suit in California State court, because when Ms. Penrod filed bankruptcy, an automatic stay stopped all that collection activity. And all collection activity thereafter is funneled through the bankruptcy process as a matter of Federal law. The contract doesn't say collection actions in California State court. It says cost of collection. Lots and lots of debts are collected through the bankruptcy process. It's fundamental to what's going on in the bankruptcy process. The litigation in this case involved first the filing of a proof of claim, single piece of evidence supporting that proof of claim, the retail installment sales contract that Ms. Penrod signed. And thereafter, Ms. Penrod responded to that proof of claim, which was asserted in the amount of $25,000, by saying, under bankruptcy law, I have a defense. And she filed a plan under Chapter 13 that bifurcated that claim and treated it as an $18,000, not a $25,000 obligation. How was that $18,000 figure arrived at? The question in the underlying Penrod litigation was how do you deal with the negative equity that was associated with the Ford Explorer that she traded in for the Ford Taurus? I got that. I'm just saying, so once you strip that out, why is $18,000 the right figure for the secured claim? Because there was $7,000 of negative equity. There was 20 — AmeriCredit loaned $25,000 to Ms. Penrod. There's no question but that she borrowed $25,000. $18,000 was associated with the price of the new car. And the rest had to do with the previous car. The rest was the amount by which the existing indebtedness associated with the Ford Explorer exceeded the trade-in value of the car. So she got credit for the trade-in value of the car, but she owed more on the car being traded in. So is 18 — just what does $18,000 represent as of the time she filed for bankruptcy? The difference between 25 and 7. 7 being the negative. So 18 was secured and 7 was unsecured, right? Correct. And that's the whole fuss of how to treat — was all the debt secured or was part of it unsecured? The bankruptcy court ruled that the 7,000 was unsecured. Correct. And there was a fight about that because there was an amendment to that. But that was — is that a fuss over the terms of the contract? I mean, nobody disputed that the contract was invalid or the — I mean — Well, the contract clearly provided for 25,000 fully secured. There's no question that as a matter of California State law that there was a $25,000 secured obligation. The question was, did bankruptcy law intervene to allow the debtor to recharacterize the negative equity as an unsecured obligation? Okay. So I'm looking at the contract, and there's the provision — this is at ER 250 — that says that she, the debtor, agreed to give the lender a security interest in the vehicle, and then it goes on to say that this security interest secures payment of all you owe on this contract. So why wasn't the underlying fight in the — that you went all the way to the Supreme Court on, why wasn't it a fight about whether that provision of the contract was enforceable or not? Well, it's clearly enforceable. The question is, as Judge Gilman puts it, is it secured or is it unsecured? No, no. I think you might have misunderstood my question. I guess I wondered if that security interest being granted in the vehicle provision of the contract, right, meant that that's — that's what the whole fight was about. Because as I understand it, AmeriCredit came in and said, we want our entire claim to be secured. Correct. And you were successful in stripping off a part of that. So why doesn't that mean that you guys actually were fighting about whether the contract as drafted was enforceable, such that you would — I agree. The question is, it was enforceable as a matter of California State law. It wasn't enforceable in full because of the bankruptcy defense of bifurcation that was available to her under 506a and not overruled by 1325. So your position is they were fighting over the enforceability of the contract Absolutely. That's the only claim that AmeriCredit had was a contractual claim. And when you succeeded in obtaining a judgment or an amount less than the full amount, that is, you prevented enforcement of the full amount, you prevailed on the contract. Absolutely. That's absolutely our position. Now, AmeriCredit says, well, action on a contract in 1717, that means a breach of contract suit and a breach of contract suit only. First of all, that's not what the contract says. The contract says costs of collection. And all this litigation was about how much they were going to collect on their debt. But in addition, if you look at the California State authorities about what action on a contract means under California law, it does not mean a breach of contract suit. It means any action that involves a contract. Well, what it has to mean is any action that involves trying to enforce your rights under the contract. Correct. And it seems to me that's precisely what they did. Correct. Whatever the procedural context. And if you look at the California State cases, they come up in a wide variety of procedural contexts. They're not all affirmative breach of contract claims brought by the creditor against the debtor. There are cases involving enforcement of consent decrees, quiet title actions, declaratory relief actions, suits for injunctions, litigation where the contract is raised defensively rather than affirmatively. And in all those cases, the courts allow, indeed, they require reciprocal fee shifting. You have a case directly on point? Yes. What? Hoopi. Hoopi involved a Chapter 13 plan where you have a secured creditor who objects to the Chapter 13 plan, unsuccessfully, the debtor prevails and disposes of the property pursuant to the plan, and then seeks reciprocal fees, and the Ninth Circuit awards it. Now, it's true that that arose under Hawaii law rather than California law, but there's no meaningful distinction between Hawaii law and California law on this particular point. Both States adopt this general policy of reciprocal fee shifting in order to avoid the unfairness of having unilateral attorney's fee clauses, which will skew results in litigation in favor of institutional creditors. So what you're doing, if I understand, you're seeking $245,000 in attorney fees, right? Yes, sir. On a $7,000 dispute. Your Honor, it was not Mrs. Penrod that chose to make this a test case for treatment of negative equity under the Bankruptcy Code and drag this case through four appellate proceedings. It was AmeriCredit that incurred all these attorney's fees. We prevailed at every level of the proceeding. And frankly, our fees, if you look at the record, were 30 percent below the fees that were incurred on the other side by the auto finance industry in trying to establish the rule that you couldn't strip down. Well, regardless, it isn't up to us to award fees if they're awardable in terms of the amount. Correct. Your Honor, the relief that we request in our briefing is that this Court retain jurisdiction and send this matter to the appellate commissioner. All the fees, substantially all the fees that we're talking about were incurred in appellate litigation before this Court and in defending the judgment of this case, the appellate commissioner is much better situated at this point than the bankruptcy court to determine the amount. It's what the appellate commissioner is there to do. The appellate commissioner deals with appellate fee awards as a matter of routine. I don't think the appellate commissioner has the authority to award fees for litigation that happened in other courts, does he? Well, the only other court that's involved, certainly with respect to denial of certiorari at the Supreme Court. There's a BAP proceeding? There's the BAP proceeding and the trial court. The trial court fees we've waived. And so there's the BAP fees. And frankly, if it's a question of do we have to go back to the bankruptcy court? Judge Carlson has now retired. We'll find another bankruptcy judge. We may go through two more layers of appeal in another four years. I would be prepared to waive whatever our claim is with respect to the BAP fees and simply have the Ninth Circuit fees, the costs of this appellate litigation, the fees on fees that we've incurred in trying to collect this claim, and the costs associated with the successful opposition. Did you want to save some time for rebuttal? I did, Your Honor, if I may. Thank you. Yes.  Good morning, Your Honors, and may it please the Court. My name is Randall Merzinski. I represent AmeriCredit Financial Services. And I'd like to actually go a little bit out of order this morning and address a point that Your Honor Judge Watford raised regarding the fee clause and the question of whether or not by stripping the lien, wasn't that, in fact, an act of enforcement of the contract or an act of defending against enforcement of the contract? No. I was thinking of it, but I know you're going to tell me I'm wrong, but I was thinking of it as you, your client, rather, was attempting to enforce this promise that Ms. Is it Penrod? Ms. Penrod made in her contract, which was basically, I'm granting you a security interest in my car until the full extent of every penny I owe, even though it's more than I had to borrow to actually purchase the car. And you came in and said, yes, we want that provision enforced, Bankruptcy Court. That's why we're submitting a claim for, you know, that we want it to be treated as fully secured for the full amount, and then you ended up losing that. Well, in fact, what we were attempting to enforce, keeping in mind that this was a Chapter 13 plan confirmation procedure, was that provision of the bankruptcy code that would not have allowed a plan to be confirmed that called for a strip down of the security interest under the other, as long as the other services. That seems a little too clever by half to me, because the only possible source of right that your client had to receive any money under bankruptcy or otherwise was a contract. If you had no contract, Ms. Penrod hadn't done anything tortious to your client, and, you know, there was no child support owed or taxes owed, it was about a contract. And so you're enforcing the bankruptcy code, but only insofar as it deals with your right to recover under your contract. I agree that the debt is contract-based, or was contract-based. I also agree that the debt is contract-based. And what is the proof of claim besides a claim that we are owed this amount under the contract? Well, the proof of claim is largely compulsory in bankruptcy. In order to participate in the process Yes, but your proof of claim was we are owed money because we have a contract, correct? That is correct. Okay. So why isn't that an action on a contract broadly construed, or an action to collect on a contract? Well, under those circumstances, it's not a far leap to say that in any bankruptcy matter where the debt is contract-based, that is an action on the contract regardless of what happens in the case. So for example, if a debtor was to file a Chapter 7 bankruptcy case and discharge a credit card debt that's based upon a contract, the debtor could then reasonably under that analysis or that logic state, well, not only have we discharged your debt, you're responsible for our attorney's fees because you filed a proof of claim in the case and you were attempting to collect the debt. That renders an action on the contract. Well, only if there is a dispute and the debtor wins, which is what happened here, and that doesn't happen very often. Well, it does. It happens fairly frequently, and objections to confirmation of Chapters 13 and 11 plans are common, and they fall on either side of the fence. Sometimes the creditor wins, sometimes the debtor wins, and sometimes it's negotiated between the two. Well, let's say this. Say you had won. I mean, the District Bankruptcy Court decided it was all secured debt. Would you have been entitled to attorney fees? We don't believe so. Why not? We've never taken the position, and we don't believe that we are. Because we weren't attempting to collect the debt. We were attempting to preserve the lien, and the language of the provision is not broad enough to encompass acts to preserve the lien. Now, keep in mind, the result that occurred in the plan confirmation process resulted in, for the time being, until such time as the plan was completed and there was a discharge, in the loss of collateral for the debt. But an under-collateralized debt is not unenforceable. You may, in fact, there are several, I mean, I have a myriad of examples on my desk of under-collateralized debts that are nonetheless enforceable to the last penny. In a Chapter 13 case, Your Honor, the plan confirmation order does not end the proceeding. The debtor has to perform under the plan, and if the debtor defaults, the case may be dismissed, at which point the contract is completely enforceable at state law. And under Section 349 of the Bankruptcy Code, the avoided lien is resurrected. Can I ask you this, just going back to the problem I have with your argument? Because I'm very open to you talking me out of this, but I'm looking at this in a particular way, and I want you to tell me if I'm wrong. When your client came in and filed a proof of claim and said, we want 100 percent of the amount she owes us treated as a fully secured claim, what was the source of your ability to get that full amount treated as a secured claim? The Bankruptcy Code, Your Honor. No, no. The Bankruptcy Code. Because if the Bankruptcy Code didn't... No, no, no. Hold on. I'm talking about in the contract. That's the only source of rights that you could have had. The source of the underlying debt. What provision of the contract gave you that right? What provision of the contract gave us the right to collateralize the grant of the security interest, Your Honor? Great, great. Okay. So that's what I thought. So hang on. Hang on. So that's why I asked your opponent. I look at the contract, and it says that she promised to grant you a security interest in her vehicle for 100 percent of the amount she owed, right? And that's the provision you relied on when you filed the proof of claim, and then you to litigate for however many years whether that provision of the contract was enforceable or not. That's how I'm looking at it. So if I'm wrong, tell me why I'm wrong. Your Honor, with all respect, I believe you're wrong. That is not what we were arguing about. What we were arguing about was a very specific provision of the Bankruptcy Code that protects automobile lenders whose vehicles were purchased within 900 days, 910 days, rather, prior to the filing of the bankruptcy case. But what it protects them to do is to collect on their contracts. What it protects them, Your Honor, is to fully collateralize the debt, to not allow for a lien strip. There is no guarantee when a plan is confirmed that the debt will ever be collected. Most Chapter 13 cases fail. Most Chapter 13 debtors who have achieved plan confirmation find themselves eventually out of bankruptcy without a discharge. When that happens, a creditor may sue on the underlying obligation and enforce it to the letter, to the extent that the value of the vehicle is such that it doesn't cover the entire amount of the indebtedness. The vehicle can be recovered, and the sales proceeds from the vehicle can be applied to the debt. If there is a deficiency, the deficiency can be collected. That is something that occurs if a Chapter 13 plan fails post-confirmation. Even if the plan does not fail, if the debtor achieves full performance of her plan and obtains a discharge order at the end of the contract, then under those circumstances, if a lawsuit were to be filed against that debtor subsequently in state court, the debtor could raise the bar of the injunction as a defense. Can I just — none of that helped me, to be quite frank, because what I'm still focused on is the fact that at the end of the day, after all of this litigation over whether the negative equity portion could be stripped out or not, what ended up happening when you lost is that your client was not permitted to enforce this provision of the contract. Our client was enjoined from enforcing the full extent of the debt. And to me, that's — I can't imagine a more quintessential action on the contract, as California courts have defined that term in 1717, than an action where one party tries to enforce their rights under a contract. And there's a battle over whether that provision is enforceable or not. But, Your Honor, this is an action on the contract, as you describe it, in the sense of an action having an effect on the contract. California — Well, no. It arises out of the contract. The debt arises out of it. But for the — yes. Because there's no other source of this debt other than the contract. That is correct. I agree with it. And so let's say this were a court proceeding in California State Court, and you'd asked for $25,000, and you'd received $18,000. Would Ms. Penrod have been the prevailing party? I'm sorry, I can't answer your question. If you had — let's leave bankruptcy out of it for a moment. If you had sued for $25,000 under the contract, and you had argued, as you did, over the meaning of the contract and its enforceability, and you could only collect $18,000 instead of the full amount, who was the prevailing party? In a state court manner? Yes. With no bankruptcy manner? In a state court manner. Who were the prevailing party? They were. I believe so. Okay. So the only question is whether by moving that argument between you into the bankruptcy court, it is — pardon the expression, I guess — stripped of its character as a contractual dispute for the purpose of 1717. Here's the distinction between your hypothetical and what, you know, basically our argument. In your hypothetical, the terms of the contract are placed directly before the court, the reality of the breach, or whether it's not — the contract is not breached, is litigated. The terms of the contract are actually determined and interpret and defined by the court. And the court — the determination is made whether or not that contract is enforceable under state or federal non-bankruptcy law. But what difference does that make? Because let's say in my hypothetical there is some public policy reason why 7,000 of it can't be enforced, that it really isn't strictly about the contract. The contract reciprocity statute would still apply. The distinction, Your Honor, is this, is that bankruptcy allows parties, allows debtors, to avoid otherwise enforceable obligations. That's a point made by the bankruptcy judge, that she did not defeat enforcement of the contract under — as a defense either state or federal. To the tune of the 7,000. But no, Your Honor, it's not a defense to the enforceability of the contract. Not of that provision of the contract, though, the one that you asserted as the basis for claiming that your claim was fully secured. She defeated your attempt to enforce that provision of the contract. No, Your Honor. I disagree. What she did was determine that she was able to strip the lien for purposes of bankruptcy, and only as an inchoate right until such time as she completed the plan and obtained a discharge. Let me ask you this one quick, because I want to forget. When I asked Mr. Bussell what his chief authority that supported his position, he mentioned the Hope A case from Ninth Circuit 2009. Do you agree that that case is on point or not? No, I don't agree that it's on point, Your Honor. That's the — the Hope A case involved the construction of a — and the analysis of a Hawaii statute. The Hawaii statute is not a good analog to the California statute for this reason. A prevailing party under the Hawaii statute doesn't have to show that they are the prevailing party on the contract and all — everything that what being on the contract means under California law. They need to show that they were the prevailing party on the disputed main issue. The disputed main issue in that case was whether or not the pre-petition foreclosure sale of the debtor's home had been completed sufficiently such that when the debtor filed bankruptcy, did the home become property of the State, and could she sell it as — through a bankruptcy sale? The Court determined that that was the disputed main issue, and it was resolved by reference solely to Hawaii law. So there was no discussion at all about whether or not the matter was on a contract within the — in the sense that did the Court have to look to the underlying terms of the contract, determine them, litigate them, what have you? In fact, in Hupai'i, they didn't have to. The matter was resolved entirely by reference to Hawaii property law. So it is not on point. It is a poor analog, and in addition, as pointed out by the District Court, the Court in Hupai'i only determined who was the prevailing party on the disputed main issue. They never even discussed whether or not the matter was on a contract. So, you know, again, I don't believe that that is a — is controlling authority at all. I can understand where there might be a situation where importing the law of another State to provide some sort of background for the fee-shifting statute in our State might make sense. This is not one of those instances. But again, to just summarize and reiterate, because I'm going to have to cede the podium here fairly quickly, bankruptcy is an unusual animal. It is a, for all intents and purposes, extra-constitutional body of law that allows debtors to avoid otherwise enforceable obligations. That is something that happens in bankruptcy court on a daily basis, hundreds of times a day. You file a bankruptcy case, and you — in a Chapter 13 context, you may change the treatment to a certain degree of the underlying debt, pay it a little less interest than the contract says, what have you. You get to avoid the contractual. But it doesn't render the contract unenforceable. Okay. But so your position is that if a creditor comes into the bankruptcy court and tries to enforce a provision of the contract, and the debtor is successful in resisting that effort, whether in full or in part, on the basis of bankruptcy law, you're saying that that takes you outside of 1717 in all cases? Not in every case. It depends upon whether or not the underlying terms of the contract were at issue and were determined and decided by the court. No. I'm just saying that there isn't any dispute about what the contract means, because we can all look at what the contract here says, and if you didn't have bankruptcy law in the background, your client would have been able to assert a security interest in that vehicle for 100 percent of the amount she owed. I'm saying, as I hear your argument, and I think we're going to hear that it's inconsistent with Travelers, but I hear you saying that as long as the debtor's efforts to resist enforcement of the contract is based solely on some provision of bankruptcy law, it has nothing to do with interpreting the terms of the contract or State law, then they're just out of luck. 1717 isn't going to apply. I wouldn't agree with that position, Your Honor, because that basically is the application of the Fobian rule. And I'm having a hard time understanding, then, how you're resisting application of 1717 to this case other than taking that extreme position. The point is, Your Honor, in our argument is that the substantive requirements under Section 1717 of determining whether or not this was a matter on a contract, i.e., did the action seek to define or interpret any term of the contract, or did the action seek to enforce the rights or duties under the agreement, not under the Bankruptcy Code, under the agreement. So your entire argument is restrictive or more restrictive than opposing counsel interpretation of California law 1717. Yes, it is. Okay. My opposing counsel's argument, as I understand it, is there is a strict reciprocity, and any time a fee clause allows for payment of fees to the prevailing party in whose contract that fee clause exists, automatically the fees are reciprocal. And that's not the case. The matter still has to be on a contract within the definition of what it means to be on a contract. Thank you, counsel. And then and only then are they reciprocal. Mr. Bussle, you have a little bit of time remaining. Thank you, Your Honor. I'll be brief. Most of my response is in our briefing, and the Court seems to be very much in control of the issue, so I don't want to take a lot of time. I would point the Court to the cases that are cited in our opening brief at pages 40 to 43, which deal directly with the issue that Judge Graber raised in argument with Appellee, that is, does California law require that the litigation that's the basis for the reciprocal fee shifting involve interpretation of the agreement or some contract defense? And the answer is absolutely not. We cite Gentino, RTC, the Weber case. In all those cases, both State and Federal legal defense is not grounded in contract law or a basis for invoking reciprocal fee shifting under 1717. In Gentino, the defense was it was a secured obligation, secured by real estate, California real estate. The defense was the one form of action rule. This is not a rule of contract law. This doesn't depend on interpretation of the contract. It's simply a rule of law that precludes enforcement of what the contract would otherwise provide. Similarly, in the RTC case, the defense was the Federal dench-doom doctrine. Again, it's a Federal doctrine. It's not a State doctrine. It's a legal defense. It's not grounded on any interpretation of the agreement or any – there was no dispute about what the agreement provided, only the application of the dench-doom doctrine. The Weber case involved arguments about enforceability under the Federal truth in lending legislation, which is Federal regulatory legislation that limits contract rights, is not based on State law, and is a pure legal defense. There are other cases cited, but I think that would be helpful to the Court. In addition, with respect to Judge Gilman's question about do you have any other cases, I cited Hoopi because Hoopi is a Ninth Circuit case. But there has been litigation in the Federal courts and, indeed, in the California State court with respect to this question, does bankruptcy count for fee shifting? And I would point the Court to the Brantford case, which is a BAP decision, and the American Suzuki case, and in the California State court, the Chinese Yellow Pages case, which, relying on travelers, says after travelers, bankruptcy was dismissed with subsequent litigation in the California State courts, the appellate court allowed fee shifting with respect to expenses incurred by the creditor in connection with getting a trustee appointed in bankruptcy, opposing a plan, proposing its own plan, and ultimately associated with the dismissal proceeding itself. So unless there are further questions from the Court, I think I will yield. Sotomayor, I think you've got it. Okay. Thank you. And the case just argued is submitted. And once again, thank you very much, both of you, for your arguments in this challenging case.
judges: Gilman, Graber, Watford